# EXHIBIT AA

JS-6 (stay)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 24-1448 JGB (SHKx)** | Date | June 30, 2025 |
| Title | ***Daeshuan Thomas v. Health Market Advisors, Inc. et al.*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: Order (1) GRANTING Defendant's Motion to Compel Arbitration (Dkt. No. 29); and (2) VACATING the June 30, 2025 Hearing (IN CHAMBERS)**

Before the Court is Defendant HealthMarkets Insurance Agency, Inc.'s motion to compel arbitration. ("Motion," Dkt. No. 29.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the June 30, 2025 hearing.

## I. BACKGROUND

### A. Procedural Background

On November 22, 2024, Plaintiff Daeshuan Thomas ("Plaintiff" or "Thomas") filed a second amended putative class action complaint against Defendant HealthMarkets Insurance Agency, Inc. ("Defendant" or "HealthMarkets") and Does 1-10, inclusive. ("SAC," Dkt. No. 19.) The SAC asserts two causes of action: (1) negligent violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(C); and (2) knowing and/or willful violations of the TCPA. (See SAC.)

On May 20, 2025, Defendant filed this Motion. (Motion.) In support of the Motion, Defendant filed the declaration of Kat Giardina ("Giardina Decl.," Dkt. No. 30) with attached exhibits ("Dreger Decl. Exs. A-E," Dkt. No. 30-1, 30-2, 30-3, 30-4, 30-5) and the declaration of Jeffrey A. Backman ("Backman Decl.," Dkt. No. 31) with an attached exhibit ("Backman Decl.

Ex. A," Dkt. No. 31-1). On June 9, 2025, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 32.) In support of the Opposition, Plaintiff filed the declaration of Plaintiff Deshaun Thomas ("Thomas Decl.," Dkt. No. 32-1) and the declaration of Gerardo J. Sosa ("Sosa Decl.," Dkt. No. 32-2) with attached exhibits ("Sosa Decl. Exs. 1-3," Dkt. Nos. 32-3, 32-4, 32-5). On June 16, 2025, Defendant replied. ("Reply," Dkt. No. 34.)

**B. Relevant Factual Background**

On May 2, 2024, at or around 5:17 p.m. EDT, Plaintiff logged on to the website https://healthmarketadvisor.com/ (the "Website" or "Site"). (Giardina Decl. Ex. D.) The Website is owned and operated by Digital Media Solutions, LLC ("DMS"). (Giardina Decl. ¶¶ 3-4.) The Website provides health insurance quotes. (Id. ¶ 9.) DMS keeps and maintains, in the ordinary course of its business operations, a database of information generated and maintained for all submissions on the Website (the "Database"). (Id. ¶¶ 5-8.)

According to the Database, Plaintiff entered his name, street address, e-mail address, and telephone number into the Website. (Id. ¶ 9.) Plaintiff submitted the information by clicking a button labeled "Compare Rates." (Id. ¶ 10.) Plaintiff's information would not have been generated on the Database had Plaintiff not made a submission on the Website. (Id. ¶ 8.)

On the Website, appearing immediately below the "Compare Rates" button, was the following language:

> By clicking the button above, I expressly consent to receive emails, calls and/or text messages, for marketing purposes, regarding insurance quotes, or other products and services on behalf of Healthmarketadvisor.com partners, including companies like InsureMe, Inc., using my provided telephone number (including any wireless number) even if it's on a federal, state or corporate do-not-call list. I acknowledge calls may be pre-recorded messages using artificial voice and/or placed using an automated telephone dialing system. I understand consent is not required to purchase and that I may revoke my consent at any time. To receive this information without providing this consent, skip. Applicable text messaging rates may apply. I agree to the Privacy Policy and Terms of Service provided.

(Id. ¶¶ 18-19; Giardina Decl. Ex. D.)

The hyperlink "Healthmarketadvisor.com partners" was off-set in blue text and, if clicked, would have opened a new browser window stating, "[c]arriers and partner companies include, without limitation, the following. . ." (Giardina Decl. ¶ 12.) "Healthmarkets" and "HealthMarkets Inc." are currently included in the listing and were both included on May 2, 2024. (Id.)

The hyperlink "Terms of Service" was off-set in blue text and, if clicked, would have opened a new browser window or tab containing the Website's Terms of Service. (Id. ¶ 14.) The Terms of Service on May 2, 2024 stated the following:

> **PLEASE REVIEW THE TERMS OF THE AGREEMENT CAREFULLY. IF A USER DOES NOT AGREE WITH THE TERMS OF THE AGREEMENT IN THEIR ENTIRETY, THAT USER IS NOT AUTHORIZED TO USE THE SITE OFFERINGS IN ANY MANNER OR FORM.**
>
> **THE AGREEMENT CONTAINS DISCLAIMERS OF WARRANTIES, LIMITATIONS OF LIABILITY, RELEASES, A CLASS-ACTION WAIVER, AND THE REQUIREMENT TO ARBITRATE ANY AND ALL CLAIMS THAT MAY ARISE HEREUNDER AGAINST COMPANY, AS WELL AS ITS PARENT, SUBSIDIARIES, RELATED PARTIES, THIRD-PARTY SERVICE PROVIDERS AND MARKETING PARTNERS (COLLECTIVELY, "COVERED PARTIES"), WHO ARE EXPRESS THIRD-PARTY BENEFICIARIES OF THE MANDATORY ARBITRATION PROVISION. THE AFOREMENTIONED PROVISIONS ARE AN ESSENTIAL BASIS OF THE AGREEMENT.**

(Giardina Decl. Ex. C at 1.)

The arbitration provision in the Terms of Service appears under the heading "19. Dispute Resolution Provisions" (hereinafter, the "Arbitration Agreement" or "Agreement"), and states:

> The Agreement shall be treated as though it were executed and performed in New York, New York and shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflict of law principles). **You hereby agree to arbitrate all claims that may arise under the Agreement that you may have against Company or any of the Covered Parties, who are express third-party beneficiaries of the mandatory arbitration provision. Without limiting the foregoing, should a dispute arise between you and Company and/or any Covered Party including, without limitation, any matter concerning the Site Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) you agree to submit the dispute for resolution by arbitration before the American Arbitration Association in New York, New York, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association (the "AAA"); and (b) you agree to first commence a formal dispute proceeding by completing and submitting an Initial Dispute Notice which can be found Here. We may choose to provide you with a final written settlement offer after receiving your Initial Dispute Notice ("Final Settlement Offer"). If we provide you with a Final Settlement Offer and you do not accept it, or we cannot**

> **otherwise satisfactorily resolve your dispute and you wish to proceed, you must submit your dispute for resolution by arbitration before the AAA, in your county of residence, by filing a separate Demand for Arbitration, which is available Here. For claims of Ten Thousand Dollars ($10,000.00) or less, you can choose whether the arbitration proceeds in person, by telephone or based only on submissions. If the arbitrator awards you relief that is greater than our Final Settlement Offer, then we will pay all filing, administration and arbitrator fees associated with the arbitration and, if you retained an attorney to represent you in connection with the arbitration, we will reimburse any reasonable attorneys' fees that your attorney accrued for investigating, preparing and pursuing the claim in arbitration. Any award rendered shall be final and conclusive to the parties and a judgment thereon may be entered in any court of competent jurisdiction. Although we may have a right to an award of attorneys' fees and expenses if we prevail in arbitration, we will not seek such an award from you unless the arbitrator determines that your claim was frivolous.**
>
> **To the extent permitted by law, you agree that you will not bring, join or participate in any class action lawsuit and/or class arbitration as to any claim, dispute or controversy that you may have against any Covered Entity and/or Company (including its employees, officers, directors, members, representatives and/or assigns). You agree to the entry of injunctive relief to stop such a class action lawsuit and/or class arbitration, as applicable, or to remove you as a participant in the suit and/or class arbitration, as applicable. You agree to pay the attorney's fees and court costs that Company and/or any Covered Party incurs in seeking such relief. This provision preventing you from bringing, joining or participating in class action lawsuits and/or class arbitrations: (i) does not constitute a waiver of any of your rights or remedies to pursue a claim individually, and not as a class action or class arbitration, in binding arbitration as provided above; and (ii) is an independent agreement. You may opt-out of these dispute resolution provisions by providing written notice of your decision within thirty (30) days of the date that you first access the Site.**

(Id. § 19.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate."). Its principal purpose is to "ensure

that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 334 (citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468 (1989) (internal quotation marks omitted)). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." Id. at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. If such a showing is made, the district court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. Id. § 3. On a motion to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox, 533 F.3d at 1119 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). A party seeking to compel arbitration under the FAA bears the burden of making this showing. Id.

## III. DISCUSSION

Defendant argues that Plaintiff is bound to arbitrate his claims on an individual basis and has waived the ability to bring a class action lawsuit. (See Motion.) In deciding a motion to compel arbitration, a district court determines "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox, 533 F.3d at 1119 (internal citations omitted).

Plaintiff disputes that a valid agreement to arbitrate exists, arguing that the Website failed to provide reasonably conspicuous notice of the Arbitration Agreement. (Opposition at 4-10.) The Court disagrees. Immediately below the "Compare Rates" button, Plaintiff was warned that: "[b]y clicking the button above" he "agree[s] to the Privacy Policy and Terms of Service provided. (Giardina Decl. Ex. D.) The "Terms of Service" appeared in blue text, in contrast with the white background and the surrounding text in black, making it clear that the Terms of Service could be accessed via hyperlink. (Id.) The first page of the Terms of Service states—in bold, all caps text—that it contains an arbitration agreement and class action waiver applicable to third parties. (Giardina Decl. Ex. C.) Plaintiff does not dispute that he visited the Website and clicked the "Compare Rates" button. See Peiran Zheng v. Live Auctioneers LLC, 2021 WL 2043562, *5 (S.D.N.Y. May 21, 2021) ("The plaintiff's argument that the plaintiff did not actually review the Terms & Conditions is irrelevant."). The Court finds that Plaintiff (1) had clear notice of the Terms of Use; (2) was admonished that, by clicking the "Compare Rates" button, he was agreeing to be bound by the Terms of Use; and (3) Plaintiff clicked the button, thereby manifesting his assent to the Terms of Use. See, e.g., Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 857 (9th Cir. 2022) ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."); Lee v. Ticketmaster, LLC,

2019 WL 9096442, at *1 (N.D. Cal. April 1, 2019), aff'd 817 Fed. Appx. 393 (9th Cir. 2020) ("Ticketmaster provided notice of the terms of use adjacent to the 'Place Order' button, included a hyperlink to the terms in a contrasting color, and informed the user that 'continuing past this page' (i.e., placing an order) would indicate assent to the terms."); Capps v. JPMorgan Chase Bank, N.A., et al., 2023 WL 3030990, at *4 (E.D. Cal. Apr. 21, 2023) ("[T]he court finds that a reasonable user would have seen the notice and would have been able to locate the Terms of Use Agreement via the hyperlink.").

Plaintiff next disputes that Defendant HealthMarkets is a third-party beneficiary to the Arbitration Agreement. (Opposition at 10-14.) However, immediately below the "Compare Rates" button, the hyperlink "Healthmarketadvisor.com partners," if clicked, expressly states that "[c]arriers and partner companies include, without limitation, the following. . . Healthmarkets [and] HealthMarkets Inc. . . ." (Giardina Decl. Ex. B.) Defendant HealthMarkets is a current marketing partner and was expressly listed as a marketing partner on May 2, 2024, the date of Plaintiff's submission. (Giardina Decl. ¶¶ 12-13.) Paragraph 3 of the Terms of Service clearly states that "**MARKETING PARTNERS**" are "**COVERED PARTIES**" and are considered "**EXPRESS THIRD-PARTY BENEFICIARIES OF THE MANDATORY ARBITRATION [AGREEMENT].**" (Giardina Decl. Ex. C at 1.) The Arbitration Agreement further provides that it applies to "all claims that may arise under the Agreement that you may have against Company or any of the Covered Parties, who are express third-party beneficiaries of the mandatory [A]rbitration [Agreement]." (Id. § 19 (emphasis omitted).) Accordingly, this Court finds that Defendant HealthMarkets is a party to the Arbitration Agreement.

Having found a valid agreement to arbitrate between the parties, the Court turns to the remaining issue of whether the Arbitration Agreement is procedurally and substantively unconscionable. (See Opposition at 16-17.)

**A. Delegation of Arbitrability**

Gateway issues concerning the validity and enforceability of arbitration provisions may be reserved for the arbitrator, so long as such delegation is clear and unmistakable. Brennan, 796 F.3d at 1130; see Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019) ("[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). Ninth Circuit precedent instructs that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." Brennan, 796 F.3d at 1130. The Arbitration Agreement expressly incorporates the AAA rules. (Giardina Decl. Ex. C § 19 ("**you agree to submit the dispute for resolution by arbitration before the American Arbitration Association in New York, New York, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association (the "AAA")**.").) Accordingly, the Court finds that the parties agreed to delegate gateway issues of arbitrability to the arbitrator.

Plaintiff argues that the Arbitration Agreement is a procedurally unconscionable contract of adhesion, and that the Agreement's terms are substantively unconscionable because they lack mutuality. (Opposition at 16, 18.) Plaintiff's arguments attack the enforceability of the Arbitration Agreement as a whole, without specifically referencing or challenging the Agreement's delegation of arbitrability. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 71 (2010) (holding that where an arbitration provision delegates issues of arbitrability but a party specifically challenges that delegation clause, the district court should consider the challenge); Bielski v. Coinbase, Inc., 87 F.4th 1003, 1011 (9th Cir. 2023) ("to sufficiently challenge a delegation provision, the party resisting arbitration must ***specifically reference*** the delegation provision and make arguments challenging it.") (emphasis added). Because Plaintiff does not challenge the Agreement's delegation of arbitrability, the Court must reserve Plaintiff's unconscionability arguments for the arbitrator.

Accordingly, because the parties contracted to arbitrate the instant dispute, the Court **GRANTS** the Motion.

**B. Plaintiff's Class Action Claims**

Under the Arbitration Agreement, Plaintiff "**agree[d] that [he] will not bring, join or participate in any class action lawsuit and/or class arbitration as to any claim, dispute or controversy . . . against any Covered Entity and/or Company**." (Giardina Decl. Ex. C § 19.) Class action waivers are enforceable under the FAA. Epic Sys. Corp. v. Lewis, 584 U.S. 497, 522–23 (2018); Sweeney v. Tractor Supply Co., 390 F. Supp. 3d 1152, 1161–62 (N.D. Cal. 2019). Accordingly, the Court **DISMISSES** Plaintiff's putative class claims.

**C. Stay**

Pursuant to the FAA, once a court concludes that a lawsuit should be arbitrated, the court "shall . . . stay the trial of the action." 9 U.S.C. § 3. The Court therefore **STAYS** the action pending the outcome of any arbitration proceedings. See Smith v. Spizzirri, 144 S. Ct. 1173, 1178 (May 16, 2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").

//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to compel arbitration (Dkt. No. 29) and **VACATES** the June 30, 2025 hearing. Plaintiff's class claims are **DISMISSED.** The Court **COMPELS** Plaintiff to arbitrate his remaining claims and **STAYS** the case pending the outcome of any arbitration proceedings. The parties shall jointly notify the Court within seven days of the conclusion of arbitration, and shall request that the Court dismiss this matter or take other action consistent with the resolution of the arbitration. The Clerk is **DIRECTED** to administratively close the case.

**IT IS SO ORDERED.**