**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| Shannan Davis,<br><br>Plaintiff,<br><br>v.<br><br>USHealth Advisors, LLC<br><br>Defendant. | Case No. 8:25-cv-02779-CEH-AAS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Shannan Davis files this First Amended Class Action Complaint against USHealth Advisors, LLC and alleges as follows upon personal knowledge as to Plaintiff, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls…. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

2. The Telephone Consumer Protection Act ("TCPA") prohibits making telephone solicitation calls to people whose phone numbers are on the National Do Not Call Registry ("DNCR"), or to people who have requested not to receive telemarketing calls from that caller.

3. The Florida Telephone Solicitation Act ("FTSA") prohibits making telephonic sales calls to people whose numbers are on the Florida "No Sales Solicitation Calls" List, or to people who have requested not to receive telephonic sales calls from that caller. The FTSA also requires that callers transmit Caller Identification information (such as the name of the caller) to the recipient of the call.

4. Defendant USHealth Advisors, LLC ("USHealth") has violated the TCPA and FTSA by calling Plaintiff Shannan Davis ("Davis") and thousands of others like her to sell its insurance products and services.

5. Davis has never consented to receive these calls, nor has she conducted any business with USHealth. Further, her number is registered on the DNCR.

6. Yet she received numerous calls from USHealth despite asking for the calls to stop.

7. These calls also failed to transmit the name of the telephone solicitor to Davis' caller identification service. So, she could not determine who was calling her before answering.

8. This is not the first time USHealth has been sued for TCPA violations. And it continues to violate the TCPA and FTSA by calling individuals—without transmitting any caller identification—who have registered their numbers on the DNCR and have asked USHealth to stop calling them.

9. Davis brings this action individually and on behalf of putative class members who similarly received calls in violation of the TCPA and FTSA.

## JURISDICTION

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district. Davis received all of the calls from USHealth in this district.

## PARTIES

12. Plaintiff Shannan Davis is a citizen of Florida, residing in the city of Lakeland, Florida.

13. Defendant USHealth Advisors, LLC is a Texas limited liability company with its principal place of business in Texas.

14. Plaintiff is, and at all times relevant hereto for the purposes of Fla. Stat. § 501.059(5) was, a "consumer" as defined by Fla. Stat. § 501.059(1)(b).

15. Defendant is, and at all times relevant hereto was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

## FACTUAL ALLEGATIONS

16. Davis is the residential telephone subscriber of the cell phone number 863-308-5155. Davis uses this phone number at home. Davis makes and takes personal calls and text messages on this phone number. This is Davis' only phone number, and she does not use it in any business.

17. Davis has never given USHealth Advisors, LLC or USHealth Group, Inc. permission to call her number. Nor has she ever transacted with either entity or inquired about their services.

18. In 2023, Davis began receiving unsolicited texts and calls from USHealth offering her health insurance.

19. For instance, Davis received the following text messages in May of 2023 from the number 386-614-9504:

i. <u>May 2, 2023 at 3:16 PM UTC</u>
Hi Ronald. There are cost-effective health options available if you'd like to reevaluate your options. May I send you a quote? Reply 'end' to cancel. USHealth

ii. <u>May 6, 2023 at 7:01 PM UTC</u>
Hi Ronald. I can text you over some ranges for all your options. Is your zip code still 33823? USHealth

iii. <u>May 22, 2023 at 5:02 PM UTC</u>
Hi Ronald. I can help you compare all of your healthcare options. Are you looking for individual or family coverage? USHealth

20. These text messages were sent by USHealth. Davis does not go by the name of Ronald, and does not know Ronald.

21. To avoid any more solicitations, Davis registered her number 863-308-5155 to the DNCR on June 22, 2023.

22. Davis' phone number is a Florida number and is therefore also on Florida's "No Sales Solicitation Calls" List.

23. Yet, Davis continued to receive calls from USHealth.

24. Specifically, on August 9, 2023 at 6:34 PM UTC, Davis received a call from the number 603-968-5624. She did not answer, and the caller left a voicemail saying:

i. "Hello this is John from USHealth Advisors. How are you? Hello. Can you hear me?"

25. On August 21, 2023, Davis received a call from the number 205-216-5395. She answered the call, and a representative informed her that they were calling from USHealth Advisors. The representative attempted to sell her health insurance. Davis asked to be placed on USHealth's internal do-not-call list.

26. On September 7, 2023, Davis received a call from the number 863-354-8890. She answered the call and, once again, a representative identified the caller as USHealth Advisors and attempted to sell Davis insurance.

27. USHealth continued to call Davis for months after she asked them to stop, but used different phone numbers in an attempt to avoid call blocking.

28. This includes, but is not limited to, calls from:

i. 863-354-8838 on December 5, 2023

ii. 863-354-8885 on January 22, 2024

29. These calls originated from phone numbers that were virtually identical to the September 7, 2023 number—863-354-8890—differing only in the last two digits.

30. Telemarketers, including USHealth, often purchase and deploy blocks of phone numbers, such as 863-354-8800 to -8899, for telemarketing.

31. By rotating through numbers within the same block, USHealth was able to continue calling Davis after she requested placement on its internal do-not-call list, while also attempting to evade call-blocking and detection.

32. There are approximately 2.5 billion assignable telephone numbers available for use in the United States.[1] The 863-354-88XX range comprises only 100 numbers, representing approximately 0.000004% of all assignable numbers. The odds that someone other than USHealth would make multiple calls to Davis, in just a four-month period, from several numbers within that same 100-number range are astronomically low. The only reasonable inference is that USHealth made these calls.

[1] *See* **Federal Communications Commission, Office of Economics & Analytics**, *Numbering Resource Utilization in the United States: Status as of December 31, 2023*, tbl. 1, at 9 (Dec. 2024), https://docs.fcc.gov/public/attachments/DOC-408489A1.pdf.

33. USHealth does not honor consumers' opt-out requests. Further, USHealth has not properly instituted procedures for maintaining a list of persons who request not to receive telemarketing phone calls. Therefore, USHealth made the calls at issue before having adequate internal do not call list procedures in place.

34. Davis' phone has caller identification for the express purpose of identifying who is calling her. She uses this to determine whether she should return missed calls from unknown numbers.

35. But USHealth does not transmit any caller identification information even though its telephone carriers allow for such identification.

36. The calls Davis received did not display any name associated with the caller, and Davis could not determine who was calling.

37. Davis identified the callers based on voicemails they left or by information given by the callers themselves when she answered live calls.

38. The calls to Davis were made for the purpose of selling insurance products offered by USHealth.

39. USHealth Advisors, LLC sells health insurance products offered by its parent, USHealth Group, Inc., and promotes the products through telephone solicitation calls.

40. Specifically, "USHEALTH Advisors is the wholly-owned national health insurance distribution arm of USHEALTH Group, Inc. The company sells

individual health coverage and supplementary products underwritten by Freedom Life Insurance Company of America, Enterprise Life Insurance Company and National Foundation Life Insurance Company; all wholly-owned subsidiaries of USHEALTH Group, Inc."[2]

41. Therefore the calls made to Davis were telephone solicitations and telemarketing calls.

42. Instead of checking the DNCR or honoring Davis' stop request, USHealth continued to knowingly and willfully make these calls to Davis. Further, USHealth knowing and willfully made these calls without displaying any caller identification.

43. Unfortunately, Davis is not the only one who has received these unwanted calls.

44. USHealth has been sued over 30 times for TCPA violations, yet continues to knowingly or willfully make these illegal calls.

45. Online job reviews show that USHealth employees are required to make a significant number of telephone solicitations daily to sell insurance products:

[2] https://www.ushealthgroup.com/hope/

1.0 ★☆☆☆☆ Feb 16, 2024 •••

## Almost lost my home and car working here

Licensed insurance agent

Former employee

✕ Recommend ✕ CEO approval ✕ Business outlook

**Pros**

If you have the capital to invest thousands of dollars into leads, you may be successful. You have to buy your leads and they don't tell you that in the interview. The people are cool and you can have fun in the office

**Cons**

There is no salary or hourly pay, you're literally in the office from 8-8 every day, a lot of times later. The insurance product you make commission on is really not good, and a lot of times agents are not honest with clients about if they qualify for a government subsidy, leaving people paying more for insurance that doesn't cover their conditions. It's really sad and I never felt good about selling it. Not only that, you're making like 2-300 cold calls a day and may or may not even be getting a sale. I had to take out personal loans to be able to pay my bills. It's definitely a pyramid scheme, and it really was the lowest point in my life. I don't want to see anyone else go through that. Of course you hear the success stories where some people get filthy rich, but that is so rare and those people have invested so much. Oh also if someone cancels their policy, you have to pay back the commission you got from it.

**Advice to Management**

Just be honest with people. I wasn't even told the actual name of the company in my interview, or the hours, or that I'd have to invest 1,000$ a week in leads to make any money.

1.0 ★☆☆☆☆ Jan 17, 2025

## Impossible Expectations

Licensed insurance agent

Former employee, less than 1 year | Tennessee City, TN

✗ Recommend ✗ CEO approval ✗ Business outlook

**Pros**

The meetings are upbeat and encouraging

**Cons**

You have to pay for office space. The only way to make it is to pay to be licensed in 12 different states. Also pay phone your phone leads. Most people hang up. You must call hundreds of people per week. Worst part is when you finally sell a policy the back office will call your customer and find a reason to deny the policy.

**Advice to Management**

Management should explain the pitfalls before allowing someone to obtain an Insurance License in which the employee pays for (including training classes)!

# 400 cold calls REQUIRED per day - Health Insurance Agent USHEALTH Advisors Employee Review

See All Reviews (1574)

1.0 ★☆☆☆☆ Jan 22, 2019

Health insurance agent

Former employee, less than 1 year | Denver, CO

✗ Recommend ✓ CEO approval ✗ Business outlook

**Pros**

Great training and my boss was really helpful.

**Cons**

Want you to work 7 days a week.
Want you to make 400 dials a day using the same lead pool as everyone else in your division. Including your own management- mentor team! The customers can have you to three or four agents calling them from all different time zones the same day. It's High Pressure sales and they force you to fight like wild dogs for the scraps from three leads table! I had many customers feel that we were harassing them to buy Health Insurance and wanted to be put on the do not call list.

**Advice to Management**

Stop being stingy with your leads! Buy leads for each individual agent! Not for the division to share and hound the consumer to death! It's very unprofessional.
Also 400 cold calls a day?!!!! Really?!!! No thanks

1.0 ★☆☆☆☆ Apr 19, 2025

## A high risk job with low to no reward

Licensed insurance agent

Former employee, less than 1 year | Boca Raton, FL

✕ Recommend — CEO approval ✕ Business outlook

**Pros**

There is opportunity to make good money but you have to be fortunate enough to have a good sales leader that invests money into quality leads, and takes the time to properly train incoming agents.

**Cons**

My sales leader was known across other US Health locations to not invest money into good leads or take the time to properly train anyone, most new hires would quit within the first few months they were hired, I unfortunately didn't know this until I had already left the company, we were required to make 800-1000 calls to horrible leads a day, working from 8-8, often until midnight, most people you called would be people that were already called by other agents a thousand times. Note that you don't get paid anything as a base salary so until you're making commission you're literally making $0 a month.

**Advice to Management**

I recommend management starts properly training new hires or at least paying people during their training period especially considering how the sales leaders boast how much money they make. It's already a risky job with the no base salary and having to pay for your own license and training.

Licensed sales agent

Former employee, less than 1 year | Cedar Park, TX

✗ Recommend ✓ CEO approval ✗ Business outlook

**Pros**

This job can be a fantastic opportunity if you're ready to invest your time and money into it. I've seen agents earn a lot, but most of them were seasoned leaders who had spent years building a client base. There are plenty of bonuses based on your performance, so if you're a self-starter, single, and willing to commit long-term, this could be the right fit for you. The best part of the experience for me was the camaraderie with other new agents. Even though we were discouraged from talking in the office, we stayed connected outside of work, checking in and keeping each other motivated, which really helped me stay focused and pushed me to stay with the company longer.

**Cons**

This job was extremely disappointing and toxic. The hours are long and exhausting, and it's not ideal for anyone with a family—expect to be away from them a lot, especially in the beginning when you're required to be on the phone constantly. The leadership was disorganized and inconsistent in their approach to training new agents, which left me feeling confused the entire time. I received conflicting advice on how to succeed in the business, making it hard to know what direction to take.

You're expected to make 300 calls a day, but most of the time, nobody answers, and when they do, you have just seconds to try to engage them before they hang up. Leads are hit or miss—people either want the product or they don't, and I had plenty of leads that signed up only to cancel later, which directly affected your performance. You're also criticized for selling supplemental policies, as if you didn't try hard enough to push a full health plan, even when that's out of your control.

46. Multiple consumers have also left complaints online about USHealth's unwanted telephone solicitations:

i. "This company will not stop calling me, despite me putting my name on the DNC registry and asking to not be called further every time they call."[3] (August 15, 2025)

ii. "Spam texts > 10 a day for the past 30 days. I didn't sign up for anything. My name is not what they mention. I just want it to stop."[4] (July 7, 2025)

iii. "Repetitive annoying phone calls from numerous numbers. All health advisers."[5] (February 7, 2025)

iv. "These spammers have texted me (different 'agents') 3-4 times daily for the past week, along with numerous spam calls."[6] (December 2, 2024)

v. "I am unsure of how I was added to their list, but I am on the registered DNC list and 'representatives' of this company have been harassing me with upwards of 15 texts and/or calls a day. I

---

[3] https://ushealth-advisors.pissedconsumer.com/review.html
[4] *Id.*
[5] *Id.*
[6] *Id.*

block every number, and they keep reaching out from new ones with new 'representatives'."[7] (July 19, 2024)

vi. "Truly scary level of non stop calls and texts. Need this to stop. I have gotten over 20 texts and 20 calls in an hour."[8] (August 18, 2024)

vii. "They are a COMPLETE SCAM! They call us 20 times per day!"[9]

viii. "Yep. They called me 12 times in under an hour. Turns out they're basically an MLM company."[10]

47. USHealth's telephone solicitation calls are a nuisance and annoyance to Davis. The calls have invaded her privacy and home. And they have diminished the value of Davis' phone and her enjoyment of life.

48. USHealth's failure to transmit valid caller identification information caused Davis concrete injury. Because the calls displayed no identifiable caller information, Davis was deprived of her ability to make an informed decision about whether to answer, return, or block the calls. She wasted time and attention determining whether the calls might be important, experienced aggravation and frustration when the calls turned out to be telemarketing, and suffered invasion of

---

[7] *Id.*
[8] *Id.*
[9] https://www.reddit.com/r/HealthInsurance/comments/ae3vrr/us_health_advisors_scam_or_not/
[10] *Id.*

her privacy and peace at home. The concealment of the caller's identity also made it impossible for Davis to avoid future calls from the same telemarketer, forcing her to endure repeated unwanted solicitations from changing, unidentified numbers.

## LEGAL STANDARD

49. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). The TCPA prohibits callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

50. **Florida No Sales Solicitation Calls List**. "No telephone solicitor shall make or cause to be made any unsolicited telephonic sales calls to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly ["no sales solicitation calls"] listing." Fla. Stat. § 501.059(4). Listings from the National Do Not Call Registry are included in Florida's state-wide "no sales solicitation calls" list. Fla. Stat. § 501.059(3)(d).

51. **Florida Caller Identification**. “It shall be unlawful for any person who makes a telephone sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor’s carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call.” Fla. Stat. § 501.059(8)(b).

52. **Internal Do Not Call Procedures**. “No person or entity shall initiate… any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls.” 47 C.F.R. § 64.1200(d). Telemarketers “must honor a residential subscriber's do-not-call request.” *Id.* at 64.1200(d)(3).

53. **Florida Stop Request**. “A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission…[m]ade by or on behalf of the seller whose goods or services are being offered.” Fla. Stat. § 501.059(5)(a).

## CLASS ACTION ALLEGATIONS

54. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), Davis brings this action on behalf of all other persons similarly situated.

55. Davis proposes the following class:

> **Federal DNCR Class:** All persons in the United States (1) who are non-customers of USHealth, (2) but to whom USHealth made, or caused to be made, more than one call within any 12-month period, (3) selling USHealth's insurance products, (4) more than 30 days after they registered their phone number on the National Do Not Call Registry, (5) within the last four years prior to the filing of this action through the date of class certification.
>
> **Florida DNCR Class:** All Florida residents (1) with telephone numbers having a Florida area code, (2) who are non-customers of USHealth, (3) but to whom USHealth made, or caused to be made, at least one call, (4) selling USHealth's insurance products, (5) while their phone number appeared on the Florida No Sales Solicitation Calls List, (5) within the last four years prior to the filing of this action through the date of class certification.
>
> **Florida Caller ID Class:** All Florida residents (1) with telephone numbers having a Florida area code, (2) to whom USHealth made, or caused to be made, at least one call, (3) selling USHealth's insurance products, (4) without transmitting any caller name to the recipient's caller identification service, (5) within the last four years prior to the filing of this action through the date of class certification.
>
> **Federal Stop Class:** All persons in the United States (1) to whom USHealth made, or caused to be made, more than one call within any 12-month period (2) selling USHealth's insurance products, (3) more than 30 days after receiving a do not call request, (4) within the last four years prior to the filing of this action through the date of class certification.
>
> **Florida Stop Class:** All Florida residents (1) with telephone numbers having a Florida area code, (2) to whom USHealth made, or caused to be made,

> be made, at least one call, (3) selling USHealth's insurance products, (4) after receiving a stop request, (5) within the last four years prior to the filing of this action through the date of class certification.

Counsel, USHealth, and USHealth's employees are excluded from the Class.

**NUMEROSITY**

56. Davis does not know the exact number of class members, but reasonably believes the number to be in the thousands, thus making joinder impossible.

57. Class members are identifiable through phone records and phone number databases.

**COMMONALITY**

58. There are issues of law and fact common to Davis and the class members including but not limited to:

i. Whether USHealth made the calls at issue.

ii. Whether the calls at issue constitute telephone solicitations and/or telemarketing calls.

iii. Whether the class members' numbers were registered on the DNCR at the time of the calls.

iv. Whether USHealth had prior express invitation or permission to make the calls at issue.

v. Whether USHealth transmits the name of the caller to recipients' caller identification service when it makes telephone solicitation calls.

vi. Whether USHealth has proper procedures for maintaining an internal do not call list.

vii. Whether USHealth honors individuals do not call requests.

viii. Whether USHealth knowingly or willfully violated the TCPA.

ix. Whether USHealth knowingly or willfully violated the FTSA.

**TYPICALITY**

59. Davis' claims are typical of the claims of the class members. Davis' claims, like the class members' claims, arise out of the same common course of conduct by USHealth and are based on the same legal and remedial theories.

**PREDOMINANCE OF COMMON QUESTIONS**

60. Common questions of law and fact predominate over questions affecting only individual class members.

**SUPERIORITY**

61. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the damages are statutory. Notice to class members can be provided by mail or other means. Class treatment is superior to multiple individual suits or piecemeal litigation because it

conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

62. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Illegal Solicitation of Persons on the DNCR**
**(On Behalf of Davis and the Federal DNCR Class)**

63. USHealth violated 47 C.F.R. § 64.1200(c)(2) by making, or causing to be made, telephone solicitation calls to Davis and members of the Federal DNCR Class after they registered their phone numbers on the DNCR.

64. Davis and members of the Federal DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

65. The Court should award $1,500 in statutory damages for each violation because the violations were knowing or willful. *Id.*

**SECOND CAUSE OF ACTION**
**Violation of Fla. Stat. § 501.059(4)**
**(On Behalf of Davis and the Florida DNCR Class)**

66. USHealth violated Fla. Stat. § 501.059(4) by making, or causing to be made, unsolicited telephonic sales calls to Davis and members of the Florida

DNCR Class while their numbers were on the Florida "No Sales Solicitation Calls" List.

67. Davis and the Florida DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. Fla. Stat. § 501.059(10).

68. The court should award $1,500 in statutory damages for each violation because the violations were knowing or willful. Fla. Stat. § 501.059(10)(b).

**THIRD CAUSE OF ACTION**
**Violation of Fla. Stat. § 501.059(8)(b)**
**(On Behalf of Davis and the Florida Caller Id Class)**

69. USHealth violated Fla. Stat. § 501.059(8)(b) by making, or causing to be made, telephonic sales calls to Davis and members of the Florida Caller Id Class without transmitting the name of the telephone solicitor to the recipient's caller identification service.

70. Davis and the Florida Id Identification Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. Fla. Stat. § 501.059(10)(a).

71. The court should award $1,500 in statutory damages for each violation because the violations were knowing or willful. Fla. Stat. § 501.059(10)(b).

**FOURTH CAUSE OF ACTION**
**Failure to Honor Opt-Out Requests**
**(On Behalf of Davis and the Federal Stop Class)**

72. USHealth violated 47 C.F.R. § 64.1200(d) by making, or causing to be made, telemarketing calls to Davis and the Federal Stop Class without instituting procedures for maintaining a list of persons who request not to receive such calls.

73. Davis and members of the Federal Stop Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

74. The Court should award $1,500 in statutory damages for each violation because the violations were knowing or willful. *Id.*

**FIFTH CAUSE OF ACTION**
**Violation of Fla. Stat. § 501.059(5)(a)**
**(On Behalf of Davis and the Florida Stop Class)**

75. USHealth violated Fla. Stat. § 501.059(5)(a) by making, or causing to be made, telephone solicitation calls to Davis and the Florida Stop Class after they asked for such calls to stop.

76. Davis and the Florida Stop Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. Fla. Stat. § 501.059(10)(a).

77. The court should award $1,500 in statutory damages for each violation because the violations were knowing or willful. Fla. Stat. § 501.059(10)(b).

## RELIEF REQUESTED

Davis respectfully requests that the Court grant the following relief:

A. Certification of the proposed Classes;

B. Appointment of Davis as a Class Representative;

C. Appointment of the undersigned counsel as lead counsel for the Classes;

D. An award of damages to Davis and the Class members, as allowed by law;

E. Injunctive relief, as allowed by law;

F. An award of fees, costs, and interest, as allowed by law;

G. Orders granting such other relief as the Court deems just, necessary, and proper.

## JURY DEMAND

Davis requests a jury trial as to all claims of the complaint so triable.

(*Signature to follow)*

Dated: December 23, 2025

Respectfully submitted,


/s/ *Reid Hudson*

Reid Hudson, *Pro Hac Vice*
The HQ Firm, P.C.
7533 S. Center View Ct. #4424
West Jordan, UT 84084
385-440-4129
reid.hudson@thehqfirm.com

*Lead Counsel for Plaintiff*